```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
KARON HANNAH,                 :
                              :
          Plaintiff,          :    Civ. No. 17-8066 (NLH) (JS)
                              :
     v.                       :    OPINION
                              :
                              :
ADMINISTRATOR                 :
ALBERT C. WAGNER YOUTH        :
CORRECTIONAL FACILITY et al., :
                              :
          Defendants.         :
                              :
_____:
```

APPEARANCES:

Gurbir S. Grewal, Attorney General of New Jersey
Kathryn M. Hansen, Deputy Attorney General
Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
PO Box 116
Trenton, NJ 08625

    Counsel for Defendants Mark Goodson, Matthew Smith, Craig LaFontaine, Gregory McLaughlin, Marisol Velazquez, and Joseph Guicheteau


Karon Hannah
777077/863299D
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065

    Plaintiff pro se


HILLMAN, District Judge

    Plaintiff Karon Hannah filed a complaint alleging that he was assaulted by corrections officers while he was incarcerated

at the Albert C. Wagner Youth Correctional Facility and was denied medical care afterwards. ECF No. 1.

Defendants Mark Goodson, Matthew Smith, Craig LaFontaine, Gregory McLaughlin, Marisol Velazquez, and Joseph Guicheteau now move for partial summary judgment. ECF No. 46. Plaintiff opposes the motion. ECF No. 48. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as it concerns a federal question. For the reasons that follow, the Court will deny summary judgment.

I. BACKGROUND

On November 28, 2016, Plaintiff Karon Hannah was confined in the Albert C. Wagner Youth Correctional Facility ("ACWYCF"). Plaintiff's Statement of Facts ("PSOF") ¶ 4. Defendant McLaughlin was escorting Plaintiff, who was handcuffed, from the yard to his cell in the East Compound. Id. When they reached the stairs, Defendant Ruggiero stated, "Why is this n----- so close to me?" Id. ¶¶ 4-5. Plaintiff told Defendant Ruggiero to "watch his mouth," at which point Defendant Ruggiero grabbed Plaintiff and threw him face-first into a steel fence. Id. ¶ 5; Defendants' Statement of Facts ("DSOF") ¶ 9. Defendant Ruggiero began assaulting Plaintiff, who was in handcuffs. PSOF ¶ 6. The parties agree that Defendant LaFontaine called a Code 33, but the reason the Code was called is disputed. PSOF ¶ 6; DSOF ¶ 15. Plaintiff alleges Defendants McLaughlin, Guicheteau, and Goodman

2

punched, kicked, and stomped him while Defendants Velazquez and LaFontaine failed to intervene. DSOF ¶¶ 11-12.

II. STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250. The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a

3

preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

III. DISCUSSION

Defendants now move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). They also argue the facts do not support a failure to intervene claim against Defendant LaFontaine. Plaintiff argues he was prevented from exhausting his available remedies.

The principal issues to be decided are (1) whether Plaintiff failed to exhaust his administrative remedies before filing this civil suit; (2) if so, were those remedies "available" within the meaning of the PLRA; and (3) is Defendant

4

LaFontaine entitled to judgment as a matter of law on Plaintiff's failure to intervene claim.

A.  Exhaustion of Administrative Remedies

Defendants assert Plaintiff failed to exhaust his administrative remedies before he filed his complaint in federal court.  Plaintiff argues the grievance procedure was not available to him.

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."  Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)).  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Id. at 1856 (citing Woodford v. Ngo, 548 U.S. 81, 85 (2007)).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007).  This includes constitutional claims, Woodford, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA must be proper, meaning "prisoners must 'complete the administrative review process in

accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." Smith v. Lagana, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004)).

The Court finds that Defendants have not met their burden of proof on failure to exhaust. See Small v. Camden Cty., 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove[.]"). There is a discrepancy between the ACWYCF remedy system as set forth in its Inmate Handbook and the materials submitted to the Court; moreover, it is not clear whether prison authorities responded to Plaintiff's grievances.

According to the ACWYCF Inmate Handbook, the "[i]nmate Remedy System which provides a mechanism for inmates to address complaint, concerns, questions, problems and/or grievances to correctional facility Administration for resolution through the use of the Inmate Inquiry Form, the Inmate Grievance Form and the Appeal process." ECF No. 46-6 at 78. "Inmates are required to utilize and exhaust the Inmate Grievance Form and Appeal process before applying to the courts for relief." Id. The

Inmate Grievance Form "is a multi-part form" that "must be placed into the correctional facility box marked INMATE REMEDY SYSTEM FORMS ONLY. . . . If an Inmate Remedy System Form(s) is deposited into any other box or forwarded through any other means, the form will not be processed." Id.

The Inmate Grievance Form has white, yellow, and pink pages. Id. at 79. "The white and yellow colored pages of the form must not be separated. The pink colored page is to be retained by the inmate once Part 1 has been completed." Id. "If the Inmate Grievance Form was not responded to or returned to the inmate in the established response time frame of 30 days for a routine Inmate Grievance Form, the inmate may submit another Inmate Grievance Form noting the date the original form was submitted." Id.

To appeal an unsatisfactory response, inmates are to return the "answered yellow copy of the Inmate Grievance Form" within 10 days of receipt. Id. at 80. "The inmate must re-deposit the originally-answered Inmate Grievance Form in the box marked 'INMATE REMEDY SYSTEM FORMS ONLY.'" Id. The Coordinator shall forward the appeal to the Administrator or Administrative designee, who has 10 working days to respond to the appeal. Id. "The decision or finding of the Administrator or designee to the Administrative Appeal is the final level of review and decision or finding of the New Jersey Department of Corrections." Id.

7

Amy Emrich, an Assistant Superintendent at New Jersey State Prison, stated in her declaration that Plaintiff submitted Inmate Remedy Form, Ref # 396807 on March 26, 2017 "in which he writes about the November 28, 2016 incident, which is the basis of his federal claim." Declaration of Amy Emrich ("Emrich Dec."), ECF No. 46-5 ¶ 15. She asserts he received a timely response on April 3, 2017 but did not file an appeal of the decision. Id. ¶ 16.

The documents submitted by Defendants in support of their motion differ from the documents described in the Handbook. Instead of papers with handwritten comments and written instructions as described in the Handbook, the documents produced by Defendants appear to be printouts from an electronic filing system. See ECF No. 46-7. The "grievance" identified by Ms. Emrich indicates Plaintiff sought a remedy for the assault on November 28, 2016 and ended by stated he was "seeking civil justice and money damages!" Id. at 27. Chellsea Tessein, an unknown employee, wrote on March 28, 2017 that "NJSP Administration cannot assist you in receiving 'money damages'" but did not address his claim further. Id. Ms. Tessein thereafter closed the inmate form. Id. She reopened the form on April 3, 2017 and closed it 10 seconds later after writing "copy sent 4/3."

8

Plaintiff also produces printouts of grievances wherein he attempted to seek redress for the assault. On December 1, 2016 he submitted a grievance stating, "I have been assaulted badly and I needto [sic] be seen as sooon [sic] as possible please I still have not seen the doctor or nobody come see me please." ECF No. 48 at 64. On December 5, 2016, Nancy Zook wrote: "You were interviewed regarding the matter on 12/2, and the issue is being reviewed. Additionally, you were medically assessed." Id. He alleges that "Plaintiff submitted several remedies in the months of December and Plaintiff would not get responses to most of them but kept receipts." Id. at 13; see also id. at 65-71. He states that he received responses to only two of his grievances. Id. at 13; see also id. at 74.[1] He states "[p]rison officials failed to comply with the inmate remedy form process by failing to send inmate the returned answered yellow copy of the inmate grievance form to appeal staff response." Id. at 7.

Plaintiff asserts he did attempt to appeal one grievance: "Ref #292832 is attempt to appeal since the facility would not send back receipts to properly appeal. Note response plaintiff received to ref#292832 states 'this matter is being addressed, "grievance is repetitive"' showing that plaintiff took the first

---

[1] Plaintiff has also submitted copies of the Inmate Grievance form with very faint handwritten notations in the section for inmate requests. The Court is unable to make out what was written in those sections. ECF No. 48 at 65-71.

step of exhausting but did not get no receipt of a response."
Id. at 13.  Grievance 292832 was created on December 15, 2016
and states: "This grievance was created by Lori Reed, ID# 20956
on behalf of the inmate."  Id. at 75.  There is no indication
what the complaint is about as the only direction is to "see
attached written Inquiry."  Id.  The written inquiry is
illegible; the only readable portion indicates SID, the Special
Investigation Division, was the division to receive the
complaint, and the staff response was "See Ref#292832."  Id. at
76.  On December 20, 2016, Nancy Zook closed #292832, saying
"This matter is already being addressed, the grievance is
repetitive."  Id. at 75.[2]

There is not enough information before the Court to resolve
the exhaustion question.  Defendants assert the grievance
process must be carried out on a series of handwritten forms but
have not provided the written responses.  They assert that the
electronic response to Plaintiff on April 3, 2017 is sufficient
to trigger his duty to appeal but have not pointed to the
section of the ACWYCF Inmate Handbook describing the

---

[2] If prison authorities did not respond to Plaintiff's original grievance in a timely manner, he was entitled under the terms of the Handbook to submit a new grievance: "If the Inmate Grievance Form was not responded to or returned to the inmate in the established response time frame of 30 days for a routine Inmate Grievance Form, the inmate may submit another Inmate Grievance Form noting the date the original form was submitted."  ECF No. 46-6 at 79.

relationship between the written grievance procedure and the electronic JPAY grievance procedure, or even explained how one appeals on the JPAY kiosk. See ECF No. 48 at 82 ("Inmates are also able to submit grievance and internal inquiry forms to the various departments within the institution utilizing the JPAY kiosks."). It seems prisoners are provided conflicting information as to how to properly exhaust their administrative remedies.

The Court declines to grant summary judgment on the basis on failure to exhaust at this time. Defendants may renew their failure to exhaust argument by submitting additional evidence, to which Plaintiff may respond with any additional arguments or evidence of his own. Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018); Small v. Camden County, 728 F.3d 265 (3d Cir. 2013). Any further motion should include a legible copy of Grievance 292832's written inquiry.

B. Failure to Intervene

Defendants' final argument is that there is insufficient evidence to state a claim against Defendant LaFontaine for failure to intervene.[3]

---

[3] In its opinion denying Defendants' motion to dismiss, the Court permitted Plaintiff to proceed against Defendant LaFontaine on excessive force and failure to intervene claims. ECF No. 39. Defendants have only requested summary judgment on the failure to intervene claim.

Plaintiff alleged in his complaint Defendant LaFontaine "falsely called a Code 33 (fighting) even though I did nothing . . . placing my life in jeopardy and causing others (officers) to respond to the Code in punching and kicking me though I was already on the ground and in handcuffs violating my Eighth Amendment." ECF No. 1 at 3. Defendant LaFontaine wrote in his special custody report: "On 11/28/16 at 1535 hrs, this officer was escorting yard in. Upon reaching the east compound podium, this officer saw I/M Hannah, Karon #8632990 push off of the fence into Officer Ruggiero. This officer immediately called a code 33 and started to secure the returning I/Ms into the east high side holding cage." ECF No. 48 at 51. He denied seeing Defendant Ruggiero push Plaintiff into the fence, and states a Code 33 "must be called" "[w]hen there is more than normal physical contact on an escort, especially aggressive contact, in this case pushing said Inmate's body into an officer's body . . . ." ECF No. 46-9 at 5.

Plaintiff presents a different version of events. Plaintiff testified during his deposition that Defendant LaFontaine "hit the button because he seen Ruggiero attack me, but he tried to clean up his actions. So he had to call a code for assaulting an officer, basically. That's what the code was about." ECF No. 46-11 at 32:10-13.

Plaintiff was charged with conduct which disrupts or interferes with the security or orderly running of the correctional facility, prohibited act .306. N.J.A.C. § 10A:4-4.1(xxix). The Disciplinary Hearing Officer reviewed the witness statements and a video of the incident. The officer's description of the video reads: "I/M is observed standing w/an Officer (who is to I/M's right) & at approx. 15:47:15 on video, I/M is then taken into the fence by a second officer. The I/M appears to turn around once hitting the fence at which time I/M was taken to the ground by the same officer." ECF No. 48 at 47.[4] The Disciplinary Hearing Officer concluded "that the evidence provided is inconsistent & does not support the charge as written." Id. at 49. Plaintiff was found not guilty. Id.

Under Plaintiff's version of events, which the Court must accept for summary judgment purposes, Defendant Ruggiero called Plaintiff a vile racial epithet, causing Plaintiff to respond that Defendant Ruggiero should "watch his mouth." Defendant Ruggiero thereafter grabbed Plaintiff and threw him face-first into a steel fence. Defendant LaFontaine witnessed the entire

---

[4] A video was provided to the Court with Defendants' response papers. ECF No. 54. Plaintiff alleges this is not the video the Disciplinary Hearing Officer viewed because it shows the incident from the "rec cage which is not the original video and it dilutes what really took place that day." ECF No. 51. Plaintiff alleges he has not been given a copy of that video in discovery. Id. The parties should address any outstanding discovery requests with Magistrate Judge Schneider.

13

exchange and called a Code 33, knowing that Defendant Ruggiero had started the physical altercation and a Code 33 would cause officers to respond to the scene.  He took no action to stop Defendant Ruggiero from assaulting Plaintiff and introduced more officers into the altercation by calling the Code 33.  The evidence comes down to credibility determinations, which this Court cannot make on summary judgment.  See Savage v. Judge, 644 F. Supp. 2d 550, 559 (E.D. Pa. 2009) ("It is not the function of this Court to make credibility determinations or resolve factual disputes when ruling on a motion for summary judgment."). Plaintiff has presented enough evidence to create a factual issue as to whether Defendant LaFontaine had a reasonable opportunity to intervene in the assault on Plaintiff but failed to do so.

The Court denies summary judgment to Defendant LaFontaine on the failure to intervene claim.

IV. CONCLUSION

For the reasons set forth above, the Court denies summary judgment.  Defendants may renew their motion within 45 days of this order on failure to exhaust grounds only.

An appropriate Order follows.


Dated: April 14, 2020             s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.